UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

LOUIS EUGENE CUNNINGHAM,

Plaintiff,

v.

SERGEANT FLETCHER,

Defendant.

Case No. 1:05-CV-00515-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Defendant Sergeant Fletcher's Motion for Summary Judgment, seeking dismissal of Plaintiff's First Amendment claim that his right to receive legal mail was violated, and Defendant's Motion to Strike Portions of Plaintiff's Affidavit. (Dkt. 119, 124.) Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 90.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

On December 11, 2012, the Court heard oral argument on the pending motions. The Court permitted Plaintiff to file a supplement to clarify his position (Dkt. 128), and Defendant was permitted to file a reply. (Dkt. 129.) Having reviewed the record and the arguments of the parties, the Court enters the following Order granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's Complaint with prejudice.

**MEMORANDUM DECISION AND ORDER - 1**

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1.    Standard of Law

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no *genuine* dispute as to any *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The

**MEMORANDUM DECISION AND ORDER - 2**

Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be of the type that can be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W.*

**MEMORANDUM DECISION AND ORDER - 3**

*Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[1] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Inmates retain the First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, prison officials may review and place reasonable limitations on inmate mail. *See Witherow v. Paff*, 52 F.3d 264 (9th Cir. 1995). For example, prison officials may inspect all incoming and outgoing mail for reasons of institutional order and security. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

"[M]aintaining institutional security and preserving internal order and discipline

---

[1] 42 U.S.C. § 1983, provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

**MEMORANDUM DECISION AND ORDER - 4**

are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Therefore, "[w]hen an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id*. at 547.

Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). A temporary delay in the delivery of mail resulting from a prison's security inspection does not violate a prisoner's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999).

Even if a prison official delayed an inmate's mail for an inordinate amount of time, a constitutional tort requires that the plaintiff show that the state actor deliberately, intentionally, or recklessly caused the deprivation. *See Redman v. County of San Diego*, 942 F.2d 1435, 1445 n.13 (9th Cir. 1991) ("deliberate indifference" is conduct intended to harm, or conduct that "was so reckless as to be tantamount to a desire to inflict harm."). Gross negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327 (1986).

**MEMORANDUM DECISION AND ORDER - 5**

2.      **Material Facts**

Pursuant to the Initial Review Order issued in this case, Plaintiff was permitted to proceed on a claim that his First Amendment rights were violated in August 2005 when Defendants allegedly intercepted clearly-marked legal mail, containing confidential attorney-client privileged communications and a $5,000 attorney's fees retainer refund check from an attorney hired in Plaintiff's state criminal case. (Dkt. 8.) Plaintiff alleged that he needed the refunded retainer money to hire a new attorney, but he could not do so, because he did not receive a replacement check until December 2005.

Plaintiff originally sued Warden Randy Blades, Assistant Warden Attencio, Lieutenant Bromley, Sergeant Fletcher, and Captain Cluney. (Dkt. 3.) After the Initial Review Order, Plaintiff filed a First Amended Complaint, narrowing his claim to one against Sergeant Fletcher.[2] (Dkt. 10.) Plaintiff is not proceeding in forma pauperis (Dkt. 2) and was responsible for his own service of process upon Defendants, and, although his case was earlier dismissed for lack of timely service, the United States Court of Appeals for the Ninth Circuit deemed Plaintiff's efforts to serve Defendant Fletcher through the Idaho Attorney General's Office sufficient to accomplish service of process. (Dkt. 74.)

Plaintiff and Defendant Sergeant Fletcher put forward different factual versions of what happened when Plaintiff's criminal defense attorney, Matthew Campbell, ended his

---

[2] Plaintiff later attempted to withdraw his amended complaint, and proceed instead on the original complaint, but was not permitted to do so by Judge Fred L. Van Sickle. (Dkt. 16, 23.) Even if the amendment had been allowed, Plaintiff has no facts supporting the culpability of any Idaho Department of Correction official or employee regarding the handling of Plaintiff's mail, as explained in this Order.

**MEMORANDUM DECISION AND ORDER - 6**

representation of Plaintiff and tried to refund Plaintiff's $5,000 retainer. Defendant relies on Mr. Campbell's description of what he did to return the retainer to Plaintiff. Plaintiff relies on speculation and supposition about what was done.

There is no dispute that, when Mr. Campbell returned Plaintiff's retainer money, he first sent a trust account check, which was never cashed or deposited, and then later on a cashier's check or money order, which eventually was deposited into Plaintiff's prison trust account. What is disputed is *when* the particular checks were sent, *to whom* they were sent, and what role Defendant played in handling the checks.

Plaintiff alleges that: (1) prior to August 11, 2005, Mr. Campbell mailed, to Plaintiff in prison, a retainer refund check for $5,000 contained in Mr. Campbell's law firm envelope; (2) Defendant Fletcher stole the check from the prison mail room; (3) on August 11, 2005, Plaintiff wrote to Warden Randy Blades complaining that he had been expecting a attorney's refund check that had not been received (Dkt. 122-3, p. 9); and (4) "[i]t wasn't until the first check was taken by the defendant that a second check was requested and, because of the missing first check, the plaintiff then requested Campbell to send the second check to [plaintiff's] daughter in California." (Plaintiff's Disputed Facts, Dkt. 121-2, p. 2.)  However, Plaintiff has no first-hand knowledge of such alleged facts. His supplement, filed on December 19, 2012, adds nothing to Plaintiff's existing facts or arguments. (Dkt. 128.)

Mr. Campbell, however, does have first-hand knowledge of what occurred–at least at his end of things–with the two different checks.  Mr. Campbell states that: (1) Plaintiff

**MEMORANDUM DECISION AND ORDER - 7**

first wrote a letter to Mr. Campbell asking that the retainer refund check be sent to

Plaintiff's daughter, Catherine Thain; (2) at Plaintiff's direction, Mr. Campbell sent the

"first" check (drawn on the law firm's trust account) to Catherine Thain, at 30908

Wellington Circle, Temecula, CA 92591 (Dkt. 119-5); (3) ISCI employees called Mr.

Campbell's office about this first check and the source of the funds, but Mr. Campbell

instructed his office staff not to answer the questions (Dkt. 119-5, pp. 48-50); (4) when

Mr. Campbell later became aware that the first check had never been negotiated, his

office obtained a cashier's check or money order in the amount of $4,945.00 (after

deducting $50.00 for his services, and an additional $5.00 for the cashier's check or

money order);(5) Mr. Campbell then mailed this replacement payment directly to the

Plaintiff at the prison; and (6) the check or money order was deposited in Plaintiff's trust

account on December 2, 2005. (Dkt. 122-4, p. 12.)[3]

     Plaintiff *assumes* that a check had been sent by Mr. Campbell's office to the

---

[3] Defendant relies on letters between Mr. Campbell and Plaintiff and emails between Mr. Campbell and Defendant's counsel. Even after the hearsay nature of these statements was raised at the oral argument, Plaintiff has not challenged the authenticity of these writings, and he has not alleged or shown that Defendant would be unable to produce Mr. Campbell at a deposition or at trial to verify the authenticity of the writings. Therefore, the Court will rely on the letters and email correspondence when determining the Motion for Summary Judgment. In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay). Additionally, Plaintiff has not challenged the authenticity of this evidence pursuant to F.R.C.P. 56(c)(2). The Court in its discretion will consider the Defendant's assertions of fact pertaining to Mr. Campbell's version of events as undisputed for purposes of the summary judgment motion, pursuant to F.R.C.P. 56(e)(2).

**MEMORANDUM DECISION AND ORDER - 8**

prison, before Campbell sent the check to Ms. Thain.  Nothing in the record to support that contention. Further, there is no reasonable inference to suggest that the check that Campbell did send to Ms. Thain was then sent by Ms. Thain to the prison in an envelope *bearing the attorney's law firm name*. To the contrary, the only reasonable inference is that the original trust account check that was sent to Ms. Thain, in an envelope addressed to Ms. Thain (and not to Plaintiff), was later sent to Plaintiff at the prison in a separate envelope that did not contain a lawyer's return address, or designate the communication as "legal mail."

Under Rule 56, a party cannot merely "dispute" a material fact. Rather, he must come forward with sufficient evidence upon which a jury could find in his favor. Here, Plaintiff has no personal knowledge to support his version of the facts. Moreover, Mr. Campbell, who *does* have knowledge of what his office did and did not send out, makes no mention of any check having been prepared prior to the check sent to Ms. Thain. Rather, he describes a single check from his trust account, sent to Ms. Thain, which was then followed (after learning that the first check was never deposited) by a cashier's check or money order sent directly to Defendant at the prison.

Therefore, for purposes of summary judgment, because Defendant came forward with evidence from Mr. Campbell, the burden of proving existence of another check shifted to Plaintiff, but he has not met that burden. Hence, summary judgment based on Defendant's asserted facts is not precluded by Plaintiff's bare argument that there is a genuine dispute on the material fact of where, how, and to whom the first check from Mr.

**MEMORANDUM DECISION AND ORDER - 9**

Campbell was sent.

**3.      Defendant's Motion to Strike**

As noted above, Plaintiff has made several factual assertions that are not based upon personal knowledge. Defendant has moved to strike these and other statements of Plaintiff and his witness, Robert Hollifield.

Under Federal Rule of Civil Procedure 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." An affidavit is an acceptable form in which to present evidence in the summary judgment context. However, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Defendant argues that Plaintiff has submitted an Affidavit that contains argument rather than testimony based on personal knowledge. Defendant states that Plaintiff has no personal knowledge that Defendant attempted to steal the check at issue or failed to forward it to the Office of Offender Accounts, or that the check was "missing" for two weeks. The Court agrees. The record contains insufficient evidence to support these contentions. The record does reflect that the first check was never cashed. Because the Affidavit lacks sufficient foundational facts supporting an allegation of theft and retention of the check by Sergeant Fletcher and an allegation that the check was "missing," those portions of the Affidavit will be stricken.

**MEMORANDUM DECISION AND ORDER - 10**

Defendant also asks the Court to strike the Declaration of Inmate Robert Hollifield, who states that all types of employee misconduct goes on at the prison, and that Defendant stole money and property from inmates and improperly charged Hollifield for insuring or certifying mail that was never actually insured or certified. (Dkt. 122-3, pp. 1-7.) The Court agrees that Hollifield's statements are without sufficient factual foundation. In addition, because Hollifield has no personal knowledge of the facts surrounding Plaintiff's check, the information Hollifield offers would not be sufficient to show that Defendant Fletcher acted with culpability in Plaintiff's circumstance. Therefore, the Motion to Strike will be granted.

## 4.    Discussion

After reviewing the parties' briefing and evidentiary submissions in this case, the Court concludes that the record reflects that there is no triable issue of material fact as to whether Plaintiff's "legal mail" was withheld from him or whether his funds were ever misappropriated by Defendant Sergeant Fletcher or anyone else at the prison. Plaintiff eventually received his $5,000 (minus his attorney's handling fees). The finer point to be determined is whether the delay in the handling of Plaintiff's check amounted to a constitutional violation–which requires that Plaintiff bring forward evidence upon which a jury could find that Defendant acted deliberately, intentionally, or recklessly in delaying Plaintiff's receipt of his check. Because the Court finds that Plaintiff has not brought forward sufficient evidence regarding whether the check arrived in an envelope clearly marked as a confidential attorney-client privileged communication, or whether Defendant

**MEMORANDUM DECISION AND ORDER - 11**

had a culpable state of mind to support a constitutional violation, summary judgment is appropriate.

The only reasonable reading of the record indicates that the first refund retainer check, issued by Plaintiff's attorney and drawn on his trust account, was sent to Plaintiff's daughter, Catherine Thain, and that the check then must have been redirected in a different envelope by Ms. Thain to Plaintiff at the Idaho prison. When that check arrived at the prison in an envelope not identifying it as an attorney-client privileged piece of mail, it was opened in the regular course of inspecting all general mail for contraband. (Dkt. 119-3, Fletcher Aff., ¶ 3.) The personal check was found and treated as potential contraband. (*Id*.) However, because it was a personal check from an attorney's office, Defendant Fletcher called the attorney's office to tell them it could not be deposited because it was a personal check. (*Id*., ¶ 7.) Mr. Campbell's office refused to give Sergeant Fletcher any information about the check that might have helped solve the mystery, and so the check was forwarded to the IDOC Office of Offender Accounts. (*Id*., ¶ 6; Dkt. 119-5, Cunningham Depo, p. 39, ll. 17-24.) Sergeant Fletcher does not know what happened to the check after it was sent to Offender Accounts. (Fletcher Aff., ¶ 6.)

Plaintiff argues that Sergeant Fletcher may not have sent the check to the Office of Offender Accounts immediately, but Plaintiff's contention that the check was "missing for two weeks" is stricken for lack of personal knowledge to support it. Sergeant Fletcher states that he placed a telephone call to the attorney's office, but he does not directly address whether the check was sent to Offender Accounts before or after his phone call.

**MEMORANDUM DECISION AND ORDER - 12**

Regardless, any question about the exact timing of when the check was internally forwarded to the Office of Offender Accounts is not enough to create a genuine dispute of material fact to permit Plaintiff to proceed to trial, given that there is no evidence in the record that Sergeant Fletcher recklessly, intentionally, or deliberately mishandled the check or misappropriated Plaintiff's funds. Rather, the record reflects that Sergeant Fletcher was attempting to resolve the issue to determine whether the check could be deposited into Plaintiff's account, notwithstanding the fact that the check was in a *form* that was inconsistent with prison security procedures, and that it had arrived in a *manner* that was inconsistent with prison security procedures. *See* Fletcher Aff., ¶ 6 ("At that time, Offender Accounts had more authority in regards to depositing funds and may have been able to have the check deposited because it came from an attorney's office."); *see* Exhibits to Fletcher Affidavit.

The record does show that some period of several weeks to several months elapsed before Plaintiff actually received the remainder of his retainer refund from Mr. Campbell, in the later mailed cashier's check or money order. However, there is no evidence that the delay was attributable to a reckless, intentional, or deliberate mishandling of the check by Sergeant Fletcher.  The delay was attributed to the fact that the original check was not sent to the prison in an envelope identifying the sender as an attorney; the fact that the check was a personal check and not a cashier's check or money order; the fact that Mr. Campbell's law office would not confirm the circumstances or source of the funds (Mr. Campbell's trust account) so that the check could have been identified; the fact that

**MEMORANDUM DECISION AND ORDER - 13**

several different prison employees tried to determine what to do with the check; the fact that Plaintiff had separate correspondence going on with Mr. Campbell about the check; and the fact that Mr. Campbell finally re-sent (according to his own time frame) a cashier's check or money order in December 2005.

Importantly, there is insufficient evidence in the record to show that Defendant Fletcher's part in the delay was reckless, intentional, or deliberate. Without evidence supporting a sufficiently culpable state of mind, Plaintiff cannot meet the elements of a § 1983 claim. Plaintiff's allegations regarding Defendant Fletcher's state of mind are unsupported in fact, because they are premised on Plaintiff's unsupported allegations that the first check was sent into the prison by Mr. Campbell in his attorney-labeled envelope.

Upon this faulty premise, Plaintiff wrote an Offender Concern Form to Sergeant Fletcher, asking why confidential legal mail that was clearly marked by a law firm was held for up to two weeks. (Dkt. 119-3, p. 23.) Defendant Fletcher responded, "I have no idea what you are speaking of," which Plaintiff contends was a deception to cover up Fletcher's act of stealing the check. However, because no evidence exists that such a check was sent to the prison in that manner, Defendant Fletcher's response is consistent with the evidence in the record, which shows that what was received was a personal check, not correspondence, and that the check did not arrive in an attorney's envelope.

The Court is not required to adopt an unreasonable inference from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d at 1208. Construed in its most favorable light, this written response by Defendant is merely a "scintilla" (meaning a glimmer or spark)

**MEMORANDUM DECISION AND ORDER - 14**

of evidence that is not enough to support the requisite culpable state of mind for

Plaintiff's delay-of-legal-mail cause of action. *See Liberty Lobby*, 477 U.S. at 252.

**5.     Conclusion**

Plaintiff has failed to bring forward sufficient evidence upon which a jury could

reasonably find that Sergeant Fletcher recklessly, deliberately, or intentionally

"intercepted clearly posted to be legal mail in content and confidential attorney client

privileged communication [sic]." (Amended Complaint, p. 1.) *See Liberty Lobby*, 477

U.S. at 252. What resulted from the circuitous manner in which Plaintiff's attorney sent

Plaintiff's retainer refund to him (originally via Plaintiff's daughter, as requested by

Plaintiff) was a prison confiscation of the check as contraband, pursuant to prison security

inspection procedures.  There was no culpable delay of legal mail or misappropriation of

Plaintiff's monies, and, thus, no violation of Plaintiff's First Amendment rights. *See

Crofton v. Roe*, 170 F.3d at 961 (a temporary delay in the delivery of mail resulting from

a prison's security inspection does not violate a prisoner's First Amendment rights).

Accordingly, Sergeant Fletcher is entitled to summary judgment, and Plaintiff's entire

case will be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1.     Defendant's Motion to Strike (Dkt. 124) is GRANTED.

2.     Defendant's Motion for Summary Judgment (Dkt. 119) is GRANTED.

3.     Plaintiff's entire case is DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 15**



DATED: **March 5, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge